IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE

## LINDA BEARD v. JAMES WILLIAM BRANSON ET AL.

**Circuit Court for Houston County
No. 1368**

**No. M2014-01770-COA-R3-CV – Filed April 26, 2016**

## OPINION ON PETITION TO REHEAR

In an opinion filed on March 31, 2016, we reversed the judgment of the trial court on the grounds that the wrongful death claims were barred by the statute of limitations because the only complaint filed prior to the running of the limitations period was void. The appellee, Linda Beard ("Plaintiff"), timely filed a petition for rehearing pursuant to Tenn. R. Civ. P. 39 in which she contends the filing of the pro se complaint by the decedent's surviving spouse, Denver Hartley, tolled the statute of limitations even if his filing constituted the unauthorized practice of law. She also contends the pro se complaint filed by Mr. Hartley was voidable, not void; therefore, the deficiency could be remedied pursuant to Tenn. R. Civ. P. 11. Further, she contends the amended complaint, which was duly signed by a licensed attorney, should relate back to the filing of Mr. Hartley's pro se complaint pursuant to Tenn. R. Civ. P. 17.01.

Plaintiff contends we erroneously relied on *Bivins v. Hosp. Corp. of Am.*, 910 S.W.2d 441 (Tenn. Ct. App. 1995), to conclude that the complaint filed by Mr. Hartley did not toll the running of the statute of limitations. We acknowledge, as Plaintiff correctly states, that "*Bivins* was not a statute of limitations case." Nevertheless, *Bivins* and other authorities identified in our opinion, clearly hold that a jurisdictional notice or jurisdictional pleading, such as a notice of appeal or complaint, filed by a non-attorney in a representative capacity is a nullity. *See id.* at 447 (citing 7 C.J.S Attorney and Client § 31, p. 869, n.13 & n.20) (holding that "the purported notice of appeal" unsigned by the appellant or by a duly authorized attorney at law was a nullity); *Investors Grp., I Ltd. v. Knoxville's Cmty. Dev. Corp.*, No. E1999-00395-COA-R3-CV, 2001 WL 839837, at *2 (Tenn. Ct. App. July 25, 2001) (holding that a complaint filed on behalf of a limited partnership and signed only by a non-attorney was "void"); *Vandergriff v. ParkRidge E. Hosp.*, No. E2014-02253-COA-R3-CV, __S.W.3d__, 2015 WL 9943593, at *4 (Tenn. Ct. App. Aug. 21, 2015) (stating that proceedings in a suit by a person not entitled to practice law are a "nullity"). Because the complaint filed by Mr. Hartley was a nullity, it did not toll the running of the statute of limitations.

Plaintiff also contends we erroneously relied on *Investors Group, I Ltd.*, 2001 WL 839837, in holding that the pro se complaint filed by Mr. Hartley was void instead of being voidable. In *Investors Group* we affirmed the trial court's dismissal of the complaint as being "void" because the complaint, which was filed on behalf of a limited partnership, Investors Group, I Ltd., was signed by a non-lawyer, Roger Cameron, who was acting in a representative capacity. *Id.* at *2. The dispositive facts and the relevant portion of the court's ruling read as follows:

> At the outset, it is necessary to observe that the plaintiff is a Tennessee Limited Partnership styled Investors Group I, Ltd. Roger Cameron, described as the sole General Partner, is not a party to this action. He signed and filed the complaint on behalf of Investors Group I, Ltd. He is not an attorney. If Investors Group I, Ltd. is a legal entity, it cannot appear pro se.
>
> * * *
>
> We hold that a Limited Partnership is an entity under Tennessee law, and that a general partner, who is not a licensed attorney, cannot sign and file a complaint on its behalf, pursuant to the mandates of *Old Hickory Engineering and Mach. Co. Inc.*, supra. We therefore agree with the Chancellor that the complaint is void. The appearance of counsel 53 days after service of the motion to dismiss did not satisfy the requirement of promptness in curing the defect. *Cf. Old Hickory*, supra wherein the lapse was 37 days, and *Doyle Shirt Mfg. Corp. v. O'Mara*, 1999 Tenn. App. Lexis 230, wherein the lapse was 45 days.

*Id.*

Although the trial court found the *Investors Group* complaint "void," and we affirmed that ruling, Plaintiff contends that the last sentence in the above quote rendered the complaint in that case voidable, not void. We respectfully disagree.

Plaintiff notes in her petition for rehearing that, "if the Court had intended to hold the filing of such a complaint void *ab initio*, there would have been no reason to assess the promptness of any effort to remedy the deficiency." In the *Investors Group* opinion, the promptness of a remedial effort was not germane to the dispositive issue, nor was the statement regarding promptness necessary in our affirmance of the trial court's ruling that the complaint was void; therefore, it was dicta. *See Bellar v. Nat'l Motor Fleets, Inc.*, 450 S.W.2d 312, 313-14 (Tenn. 1970) ("Dictum is an opinion expressed by a court upon some question of law which is not necessary to the decision of the case before it."). "Court decisions must be read with special reference to the questions involved and necessary to be decided, and language used which is not decisive of the case or decided

therein is not binding as precedent." *Shepherd Fleets, Inc. v. Opryland USA, Inc.*, 759 S.W.2d 914, 922 (Tenn. Ct. App. 1988) (citing *Rush v. Chattanooga DuPont Emp. Credit Union*, 358 S.W.2d 333 (Tenn. 1962)). Therefore, the unnecessary statement regarding prompt remedial action in the *Investors Group* opinion has no precedential value. Moreover, we respectfully disagree with the notion that a void complaint, one that is a nullity, can be remedied. For the foregoing reasons, we respectfully disagree with Plaintiff's contention that the *Investors Group* complaint was "voidable" for such an interpretation is in direct conflict with the trial court's ruling that the complaint was "void," which ruling we affirmed.

Plaintiff also relies on *Old Hickory Engineering & Machine Company, Inc. v. Henry*, 937 S.W.2d 782 (Tenn. 1996), wherein our Supreme Court stated that the 1995 amendment to Tenn. R. Civ. P. 11 provides: "An unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the attorney or party." *Id*. at 786. Significantly, however, the court expressly stated that the "amendment is not applicable to this case." Because the amendment to Tenn. R. Civ. P. 11 was not applicable to the issues on appeal in *Old Hickory*, it is not binding as precedent. *See Rush*, 358 S.W.2d at 350 ("Every decision must be read with special reference to the questions involved and necessary to be decided, and language used not decisive of the case or decided therein is not binding as a precedent."); *see also Shepherd Fleets, Inc.*, 759 S.W.2d at 922. Nevertheless, we respect the statement by the Supreme Court in *Old Hickory* that the 1995 amendment to Tenn. R. Civ. P. 11 "is declarative of the policy and practice regulating court proceedings in that particular."[1] *Old Hickory Eng'g & Mach. Co., Inc.*, 937 S.W.2d at 786.

The foregoing notwithstanding, we believe the dispositive factor is whether the "unsigned paper" or "pleading" to be amended pursuant to Rule 11 is a "jurisdictional" paper or pleading, such as a complaint or notice of appeal, or a non-jurisdictional paper

---

[1] The relevant portion of the Supreme Court ruling in *Old Hickory* reads:

> Based on the principle declared by this amendment, the status of the complaint on the date it was filed was as though it contained no signature, and, because of that deficiency, it was subject to being stricken from the record. The construction most favorable to the plaintiff in this case is that the plaintiff was notified of the fatal deficiency in the complaint by the defendant's motion to dismiss on April 13, 1994, and the plaintiff took no action until its attorney filed a notice of appearance on May 20, 1994. That is not "prompt" action. In addition, filing notice of appearance did not correct the deficiency. Merely advising the court of representation did not constitute the certification required by the rule. The action by the plaintiff's lawyer did not cure the deficiency in time or substance.

*Old Hickory Eng'g & Mach. Co., Inc.*, 937 S.W.2d at 786.

or pleading that is filed after the trial court has obtained jurisdiction.[2] The point being, although an unsigned paper filed in the latter situation has no bearing on the court's authority to hear a case, if the "unsigned paper" is a jurisdictional notice of appeal or complaint, then the court does not obtain jurisdiction over the matter. *See Bivins*, 910 S.W.2d at 447; *see also Vandergriff*, 2015 WL 9943593, at *6. For example, in *Vandergriff* we concluded that a complaint signed only by a non-lawyer who was attempting to assert the claim of another in a representative capacity was *void*, a *nullity*, and of *no legal effect* and, because the complaint was void, the trial court never obtained jurisdiction. *See Vandergriff*, 2015 WL 9943593, at *5-6. As we explained:

> Something that is "void" has no legal effect. *See* Black's Law Dictionary 1349 (9th ed.2010). Another legal dictionary defines "void" as "absolutely null," going on to describe an order that is "void *ab initio*" as "that which is void in the beginning, [which] cannot be cured by waiver, acquiescence or lapse of time." Bryan A. Garner, A Modern Legal Dictionary 920 (2d ed.2005). *Because the complaint was void as to Catherine's claims, it was insufficient to commence an action on her behalf, and neither Catherine nor her claims were properly before the trial court*. *See* Tenn. R. Civ. P. 3 (providing that every civil action commences when a complaint is filed). This is of the utmost significance because a decree is "void as to any person shown by the record itself not to have been before the Court in person, or by representation." *See Gentry v. Gentry*, 924 S.W.2d 678, 680 (Tenn. 1996) (emphasis added); *see also Tate v. Ault*, 771 S.W.2d 416, 419 (Tenn. Ct. App. 1988) (noting that a judgment is void if the court rendering it lacked jurisdiction over the subject matter or the parties). For the reasons stated above, neither Catherine nor her claims were before the trial court; therefore, the trial court's judgment is void to the extent it ruled on the merits of Catherine's purported claims. *See Gentry*, 924 S.W.2d at 680.

*Id.* at *6 (emphasis added).

With the foregoing in mind, we turn our attention to consider the office of Tenn. R. Civ. P. 11 in relation to a void complaint. As is the case with all Tennessee Rules of Civil Procedure, Rule 11 applies to civil actions. "All civil actions are commenced by filing a complaint with the clerk of the court." Tenn. R. Civ. P. 3. The filing of a void complaint is a nullity, which has no legal effect. *See Bivins*, 910 S.W.2d at 447; *see also Vandergriff*, 2015 WL 9943593, at *6. Therefore, the filing of a void complaint does not commence a civil action. Because the filing of a void complaint does not commence a civil action, Rule 11 has no office in relation to a void complaint. For these reasons, we conclude that Tenn. R. Civ. P. 11 is not available to cure a void complaint.

---

[2] Tenn. R. Civ. P. 11 uses the phrase "unsigned paper" not pleading.

Moreover if Rule 11.01 were applicable, it would not provide a basis for relief due to Plaintiff's failure to promptly correct the deficiency. The rule reads in pertinent part:

> Every pleading, written motion, and other paper shall be signed by at least one attorney of record in the attorney's individual name, or, if the party is not represented by an attorney, shall be signed by the party. . . . An unsigned paper shall be stricken unless omission of the signature is *corrected promptly after being called to the attention of the attorney or party*.

Tenn. R. Civ. P. 11.01 (emphasis added).

Our courts have considered what is required for a correction to be considered "prompt" under this rule. *See Old Hickory Engineering and Mach. Co., Inc.,* 937 S.W.2d at 786 (delay of 37 days was not prompt); *Doyle Shirt Mfg. Corp. v. O'Mara*, 1999 WL 187160, at *3 (Tenn. Ct. App. April 7, 1999) (delay of 45 days was not prompt); *Investors Group, I Ltd.*, 2001 WL 839837, at *2 (appearance of counsel 53 days after service of motion to dismiss did not satisfy the promptness requirement). In this case, Trinity brought the complaint's deficiency to Plaintiff's attention on November 1, 2005, when it filed its motion to dismiss. Plaintiff did not address the deficiency until 121 days later, on March 2, 2006, when he filed a corrected complaint signed by an attorney. Therefore, the corrective action was not sufficiently "prompt."[3]

Plaintiff also contends that the amended complaint, which was duly signed by a licensed attorney and filed after the statute of limitations had run, should relate back to the initial filing date given the policy of liberality in allowing the addition or substitution of parties in wrongful death cases. Again, we respectfully disagree.

Plaintiff correctly notes that there is a policy of "liberality . . . in allowing the addition or substitution of a proper party plaintiff for an improper plaintiff" under Tenn. R. Civ. P. 17.01. *See Chapman v. King*, 572 S.W.2d 925 (Tenn. 1978). However, in each of the cases Plaintiff relies upon there was a viable complaint wherein a party could be added or substituted. Here, the complaint Plaintiff seeks to amend does not exist, it is a nullity because it was void *ab initio* and "there can be no 'relation back' to a pleading . . . that was a nullity from the start." *In re A.S.C.*, No. E2013-01830-COA-R3-PT, 2014 WL 4269114, at *6 (Tenn. Ct. App. Aug. 29. 2014). Because the complaint filed by Mr.

---

[3] The deficiency in the initial complaint was brought to the attention of Plaintiff when Trinity filed its Rule 12 motion to dismiss; therefore, the time within which Plaintiff could promptly correct the deficiency began at that time. *See* Tenn. R. Civ. P. 11.01 ("[A]n unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the attorney or party.").

Hartley was a nullity, there was no complaint to which the amended complaint could relate back.

For the forgoing reasons, we respectfully deny the petition to rehear and supplement our original opinion with the foregoing, which shall become part of the court's decision in this matter.

Costs are assessed to the appellee, Linda Beard.

PER CURIUM

# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
February 16, 2016 Session

## LINDA BEARD v. JAMES WILLIAM BRANSON ET AL.

### Appeal from the Circuit Court for Houston County
No. 1368      Robert E. Burch, Judge

_____

### No. M2014-01770-COA-R3-CV – Filed March 31, 2016

_____

The dispositive issue in this wrongful death action is whether the pro se complaint filed by the decedent's surviving spouse tolled the statute of limitations. The defendants, a hospital and a physician, filed a motion for summary judgment, arguing that the complaint was a nullity because the surviving spouse was asserting claims in a representative capacity and the complaint was not signed by a licensed attorney. It is undisputed that the decedent was survived by three heirs, the surviving spouse and two children of the decedent. The trial court denied the motion concluding that, although the pro se complaint could not assert the claims of the children, the surviving spouse could properly assert his own claims. The trial court also held that the initial complaint was sufficient to toll the statute of limitations and the claims of the children were not time barred because a licensed attorney signed and filed an amended complaint that related back to the original filing pursuant to Tenn. R. Civ. P. 15. Following a jury trial, the defendants were found liable and damages were awarded. The hospital appealed. We conclude the claims asserted by the surviving spouse were brought in a representative capacity on behalf of the decedent and were not his individual claims. Filing a complaint on behalf of another constitutes the practice of law and "[p]roceedings in a suit by a person not entitled to practice law are a nullity." *Bivins v. Hosp. Corp. of Am.*, 910 S.W.2d 441, 447 (Tenn. Ct. App. 1995). Because the complaint filed by the surviving spouse was a nullity, it did not toll the statute of limitations and no other complaint was filed within the statute of limitations. Therefore, the trial court erred in denying the hospital's motion for summary judgment based on the statute of limitations defense. Accordingly, we reverse and remand with instructions to dismiss all claims and vacate all judgments against the hospital.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed**

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

David L. Johnson, Nashville, Tennessee; James T. McColgan, III, and Sherry S. Fernandez, Cordova, Tennessee, for the appellant, Trinity Hospital, LLC.

Philip N. Elbert, Nashville, Tennessee, for the appellee, Linda Beard.

**OPINION**

On September 13, 2004, Ruth Hartley ("the decedent") was admitted to Trinity Hospital, LLC ("Trinity") to undergo colon surgery which was performed by James William Branson, M.D. Following the surgery, the decedent developed complications and remained hospitalized. On September 27, 2004, Dr. Branson ordered an x-ray and CT scan of the decedent's abdomen and pelvis. The CT scan was reviewed off-site by Stanley Anderson, M.D., a private radiologist under contract with Trinity. Dr. Anderson reported that the CT scan indicated the possibility of a mechanical bowel obstruction; however, Dr. Branson read the report and disagreed with the conclusion, thus no additional steps were taken.

The following day, the decedent's condition continued to deteriorate. Dr. Branson ordered that the decedent be transferred to Centennial Medical Center in Nashville by helicopter. When the decedent arrived, it was determined that she was in septic shock. While undergoing emergency surgery, the decedent went into cardiac arrest and died on September 29, 2004.

On September 12, 2005, Denver Hartley, the decedent's surviving spouse, filed a pro se complaint against Trinity and Dr. Branson seeking to recover damages for the wrongful death of his wife. The complaint asserted that the defendants negligently failed to diagnose and treat the decedent's condition and sought damages for the decedent's pain and suffering, the economic value of her life, loss of consortium, funeral expenses, and other damages incurred.

On November 1, 2005, the defendants filed motions to dismiss the wrongful death action on the ground the statute of limitations had expired. Specifically, they contended the pro se complaint filed by Mr. Hartley was a nullity because Mr. Hartley, who was not a licensed attorney, was attempting to assert the decedent's wrongful death claims in a representative capacity and no valid complaint had been timely filed.

Three months later, while the motions to dismiss were pending, a licensed attorney filed a formal notice of appearance on behalf of Mr. Hartley. Shortly thereafter, on February 27, 2006, Mr. Hartley's counsel filed a Memorandum of Law in Opposition to

Defendants' Motion to Dismiss.[1] On March 2, 2006, an amended complaint that was signed by Mr. Hartley's counsel was filed with the court and served upon the defendants.

On July 3, 2006, the trial court denied the defendants' motions to dismiss. The trial court construed the Wrongful Death Statute, Tenn. Code Ann. § 20-5-106, as authorizing the decedent's surviving spouse to maintain an action on behalf of himself; thus, it held that Mr. Hartley could file the complaint pro se because he was not acting in a representative capacity, but was pursuing his own lawsuit.[2]

In November 2006, both defendants moved for summary judgment, raising the same issue as their motions to dismiss. The summary judgment motions were supported by affidavits showing that the decedent was survived by two children. Thus, the defendants argued that, because Mr. Hartley was not the decedent's sole statutory beneficiary, he was asserting the wrongful death claims in a representative capacity. On March 14, 2007, the trial court denied these motions, finding that it was proper for Mr. Hartley to act pro se to pursue his own claim and that his pursuit of claims on behalf of other beneficiaries could be cured by amendment, which would relate back to the original filing date. Based on the above reasoning, the trial court held that the filing of the complaint in this action tolled the statute of limitations.

On December 23, 2008, Mr. Hartley passed away. A suggestion of death was filed, and his daughter, Linda Beard, was substituted as plaintiff, pursuant to Tenn. R. Civ. P. 25.01(1), by agreed order on March 31, 2009.

A trial took place in this case from May 28 through June 13, 2014. The jury returned a verdict finding liability, awarding damages in the amount of $750,000, and apportioning 40% of the fault to Dr. Branson, 50% of the fault to Trinity, and 10% of the fault to Dr. Anderson, a radiologist who was not a party. As a discovery sanction, Trinity was deemed vicariously liable for the acts and omissions of Dr. Anderson.[3] The trial

---

[1] Dr. Branson filed a second motion to dismiss on February 27, 2006, contending that the initial complaint should be stricken for failing to comply with Rule 11 of the Tennessee Rules of Civil Procedure, which requires that counsel for a party represented by counsel sign the pleadings.

[2] When the trial court made this ruling, the record did not reveal that there were other statutory beneficiaries of the decedent.

[3] Early in this litigation, Mr. Hartley requested production of the decedent's medical records from Trinity, including the CT scan performed on September 27, 2004. In response, Trinity represented that the CT scan could not be located and that it was sent to Centennial Medical Center along with the decedent when she was transferred; however, neither the ambulance nor Centennial Medical Center had a record of the CT scan. Mr. Hartley requested that Trinity download another copy of the scan from its data files from its radiology file server, but Trinity stated that those files had been deleted. In January 2009, a disc copy of the CT scan was finally produced by Trinity, who claimed to have misfiled the CD. A couple of years

(continued…)

court entered judgment on this award on August 8, 2014. The trial court also awarded the plaintiff discretionary costs in the amount of $68,945.85. Trinity filed a motion for a directed verdict, or alternatively, a new trial. The motion was denied.

Trinity timely appealed to this Court. Dr. Branson did not appeal. Trinity raises three issues: (1) whether the trial court erred by failing to dismiss the complaint as time-barred; (2) whether the trial court erred by awarding partial summary judgment to the plaintiff; and (3) whether the trial court's award of discretionary costs against Trinity should be set aside.

We find the statute of limitations defense dispositive of all three issues raised by Trinity. Therefore, we shall limit our discussion to Trinity's contention that the trial court erred in denying its motion for summary judgment.

STANDARD OF REVIEW

We review a trial court's summary judgment adjudications de novo without a presumption of correctness. *Rye v. Women's Care Center of Memphis*, *MPLLC*, No. W2013-00804-SC-R11-CV, __S.W.3d__, 2015 WL 6457768, at \*12 (Tenn. Oct. 26, 2015). In doing so, we make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Id.* (citing *Estate of Brown,* 403 S.W.3d 193, 198 (Tenn. 2013)).

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04; *see also Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008). The party moving for summary judgment bears the burden of demonstrating both that no genuine dispute of material fact exists and that it is entitled to a judgment as a matter of law. *Martin*, 271 S.W.3d at 83.

When the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either: (1) by affirmatively negating an essential element of the nonmoving party's claim; or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense. *Rye*, 2015 WL 6457768, at \*22.

---

later, after the plaintiff's experts were able to review the CT scan, they determined that Dr. Anderson, a non-party radiologist, negligently failed to note evidence of bowel perforation when reading the CT scan. Because of an extended delay in the production of these documents, Ms. Beard was foreclosed from adding Dr. Anderson as a defendant. Ms. Beard moved for partial summary judgment to declare that Dr. Anderson was an apparent agent of Trinity as a matter of law. The trial court granted the motion and instructed the jury that Trinity was vicariously liable for any negligent acts or omissions of Dr. Anderson.

**ANALYSIS**

**I. TENNESSEE'S WRONGFUL DEATH STATUTE**

A wrongful death cause of action did not exist at common law. *Jordan v. Baptist Three Rivers Hosp.* 984 S.W.2d 593, 596 (Tenn. 1999) (citing Annotation, *Modern Status of Rule Denying a Common-Law Recovery for Wrongful Death*, 61 A.L.R.3d 906 (1975)). Instead, actions for personal injuries that resulted in death terminated at the victim's death. *Id.* However, "Tennessee was one of the earliest states to abrogate . . . '[t]he artificial rule of the common law that every right of action for personal injury died with the person injured.'" *Id.* (quoting *E. Tenn. V. & G. Ry. Co. v. Lilly*, 18 S.W. 243, 244 (Tenn. 1891)); *see also* Tenn. Code Ann. §20-5-106 et. seq.

Today, every jurisdiction in the United States has a wrongful death statute permitting designated beneficiaries to recover losses sustained as a result of the tort victim's death. *Jordan*, 984 S.W.2d at 596 (citing *Dixie Ohio Exp. Co. v. Butler*, 166 S.W.2d 614, 615 (Tenn. 1942)). The Tennessee Supreme Court has described the approach taken by jurisdictions in adopting such statutes as follows:

> Although all states have abolished the rule of non-liability when personal injury results in death, the statutory methods of doing so fall into two distinct categories—wrongful death statutes and survival statutes. *See Sea-Land Servs., Inc. v. Gaudet*, 414 U.S. 573, 575 n.2, 94 S. Ct. 806, 39 L.Ed.2d 9 (1974).

> The majority of states have enacted "survival statutes." These statutes permit the victim's cause of action to survive the death, so that the victim, through the victim's estate, recovers damages that would have been recovered by the victim had the victim survived. *Sea-Land*, 414 U.S. at 575 n. 2, 94 S. Ct. 806; *Recovery for Wrongful Death* at § 1:15; *Prosser*, § 126, at 942-43. Survival statutes do not create a new cause of action; rather, the cause of action vested in the victim at the time of death is transferred to the person designated in the statutory scheme to pursue it, and the action is enlarged to include damages for the death itself. *Prosser*, § 126, at 942-43. "[T]he recovery is the same one the decedent would have been entitled to at death, and thus included such items as wages lost after injury and before death, medical expenses incurred, and pain and suffering," and other appropriate compensatory damages suffered by the victim from the time of injury to the time of death. *Id.* at 943.

In contrast to survival statutes, "pure wrongful death statutes" create a new cause of action in favor of the survivors of the victim for their loss occasioned by the death. *Recovery for Wrongful Death* at § 1:13; William T. Gamble, *Actions for Wrongful Death in Tennessee*, 4 Vand. L. Rev. 289, 290 (1950). These statutes proceed "on the theory of compensating the individual beneficiaries for the loss of the economic benefit which they might reasonably have expected to receive from the decedent in the form of support, services or contributions during the remainder of [the decedent's] lifetime if [the decedent] had not been killed." *Prosser*, § 127, at 949. Hence, most wrongful death jurisdictions have adopted a "pecuniary loss" standard of recovery, allowing damages for economic contributions the deceased would have made to the survivors had death not occurred and for the economic value of the services the deceased would have rendered to the survivors but for the death. *Recovery for Wrongful Death* at § 3:1.

*Jordan*, 984 S.W.2d at 597-98.

Tennessee's wrongful death statutes provide that "[t]he right of action that a person who dies from injuries received from another, or whose death is caused by the wrongful act, omission, or killing by another, would have had against the wrongdoer, in case death had not ensued, shall not abate or be extinguished. . . ." Tenn. Code Ann. § 20-5-106(a). This right of action may be "instituted by the personal representative of the deceased or by the surviving spouse in the surviving spouse's own name, or if there is no surviving spouse, by the children of the deceased or by the next of kin." Tenn. Code Ann. § 20-5-107(a). The party suing under these statutes has the right to recover damages "for the mental and physical suffering, loss of time and necessary expenses resulting to the deceased from the personal injuries, and also the damages resulting to the parties for whose use and benefit the right of action survives from the death. . . ." Tenn. Code Ann. § 20-5-113.

With regard to the *damages* available under these statutes, the Supreme Court has noted that Tennessee's approach is a hybrid between the "survival" and "pure wrongful death" models. *Jordan*, 984 S.W.2d at 597-98. Specifically, the Supreme Court has stated:

Tennessee's approach to providing a remedy for death resulting from personal injury is a hybrid between the survival and wrongful death statutes, resulting in a statutory scheme with a "split personality." 27 Tenn. L. Rev. at 454. The pertinent damages statute, Tenn. Code Ann. § 20-5-113, has been in existence in one form or another since 1883 . . . .

- 6 -

The plain language of Tenn. Code Ann. § 20-5-113 reveals that it can be classified as a survival statute because it preserves whatever cause of action was vested in the victim at the time of death. *Jones v. Black*, 539 S.W.2d 123 (Tenn. 1976); *Milligan v. American Hoist & Derrick Co.*, 622 F.Supp. 56, 59 (W.D. Tenn. 1985). The survival character of the statute is evidenced by the language "the party suing shall have the right to recover [damages] resulting **to the deceased from the personal injuries**." *Thrailkill v. Patterson*, 879 S.W.2d 836, 841 (Tenn. 1994) (emphasis added). Tennessee courts have declared that the purpose of this language is to provide "for the continued existence and passing of the right of action of the deceased, and not for any new, independent cause of action in [survivors]." *Whaley v. Catlett*, 103 Tenn. 347, 53 S.W. 131, 133 (Tenn. 1899); *see also Herell v. Haney*, 207 Tenn. 532, 341 S.W.2d 574, 576 (Tenn. 1960); *Memphis St. Ry. Co. v. Cooper*, 203 Tenn. 425, 313 S.W.2d 444, 447-48 (Tenn. 1958); *Jamison v. Memphis Transit Management Co.*, 381 F.2d 670, 673 (6th Cir. 1967). Accordingly, Tenn. Code Ann. § 20-5-113 "in theory, preserve[s] the right of action which the deceased himself would have had, and . . . [has] basically been construed as falling within the survival type of wrongful death statutes for over a century" because it continues that cause of action by permitting recovery of damages for the death itself. *Jones*, 539 S.W.2d at 123-125.

Notwithstanding the accurate, technical characterization of Tenn. Code Ann. § 20-5-113 as survival legislation, the statute also creates a cause of action that compensates survivors for their losses. The statute provides that damages may be recovered "**resulting to the parties for whose use and benefit the right of action survives from the death.**" *Id.* (emphasis added). Hence, survivors of the deceased may recover damages for their losses suffered as a result of the death as well as damages sustained by the deceased from the time of injury to the time of death. *Jones*, 539 S.W.2d at 124.

*Jordan*, 984 S.W.2d at 597-98 (emphasis in original).

However, while acknowledging the hybrid nature of the wrongful death statutes as it relates to damages, the Supreme Court has repeatedly held that the *claims* asserted in a wrongful death case are held solely by the decedent and that the statutes do not create a new cause of action for the decedent's statutory beneficiaries. *See Jones v. Black*, 539 S.W.2d 123, 124 (Tenn. 1976); *Lynn v. City of Jackson*, 63 S.W.3d 332, 335-36 (Tenn. 2001); *Ki v. State*, 78 S.W.3d 876, 879-80 (Tenn. 2002).

For example, in *Ki v. State*, the Supreme Court considered an appeal from a wrongful death action brought by the parents of a student who died in a dormitory fire at the University of Tennessee. *Ki*, 78 S.W.3d at 877. At issue in that case was whether the student and his parents could both be considered "claimants" under Tenn. Code Ann. § 9-8-307(e), a statute that limits the damages recoverable against the State to "three hundred thousand dollars ($300,000) per claimant and one million ($1,000,000) per occurrence." *Id.* at 879. The Tennessee Claims Commission held that both the decedent and his parents were considered "claimants" in this action and awarded the parents: (1) $300,000 on behalf of their son; and (2) $300,000 for their own losses. *Id.* On appeal, this Court reversed in part, holding that the student is the only claimant under the statute. *Id.* at 879. The Supreme Court affirmed the judgment of this Court, reasoning as follows:

> Section 20-5-106(a) of the Tennessee Code Annotated provides in pertinent part that
>
>> *[t]he right of action which a person*, who dies from injuries received from another, or whose death is caused by the wrongful act, omission, or killing by another, *would have had against the wrongdoer*, in case death had not ensued, *shall not abate* or be extinguished by the person's death *but shall pass* to the person's surviving spouse and, in case there is no surviving spouse, to the person's children or next of kin . . . .
>
> (Supp. 2000) (emphasis added). The plain language of Tenn. Code Ann. § 20-5-106(a) establishes that in a wrongful death suit only one right of action exists: the action that the decedent would have had, absent death, against the negligent wrongdoer. . . . The decedent is the sole party who holds a right of action or claim in a wrongful death suit. *See Lynn v. City of Jackson*, 63 S.W.3d 332, 336 (Tenn. 2001) (stating that "Tennessee's wrongful death statute does not create a new cause of action for the beneficiaries but instead preserves the right of action of the decedent."). The decedent's survivors are only asserting the decedent's right of action on behalf of the decedent. Accordingly, because Tenn. Code Ann. § 20-5-106(a) creates one claim or right of action vested in the decedent, the decedent is the sole "claimant" in a wrongful death action.
>
> The [parents] maintain, however, that Tenn. Code Ann. § 20-5-113 creates two separate rights to damages, which has the effect of permitting two claimants to exist in a wrongful death action. . . . Section 20-5-113 of the Tennessee Code Annotated establishes the types of damages that may be recovered in a wrongful death action. In *Jordan v. Baptist Three Rivers Hospital*, 984 S.W.2d 593 (Tenn. 1999), we held that the wrongful death damages statute, Tenn. Code Ann. § 20-5-113, permits an award of

consortium damages as part of the pecuniary value of the decedent's life. *Id.* at 601. As we stated in *Jordan*, however, "[t]his holding does not create a new cause of action but merely refines the term 'pecuniary value.'" *Id.* Thus, beneficiaries do not have an individual claim or cause of action for the wrongful death of the decedent. Instead, the beneficiaries may recover damages for the individual losses that arise pursuant to the right of action vested in the decedent. *See Kline v. Eyrich*, 69 S.W.3d 197, 207 (Tenn. 2002) (stating that although the living beneficiaries of the action may seek recovery for their own losses in addition to the losses of the decedent, the right of action remains one that is single and indivisible). More than one claimant is not created in a wrongful death action, however, simply because beneficiaries may be compensated for their individual losses as a part of the decedent's right of action or claim.

*Ki*, 78 S.W.3d at 879-80 (emphasis in original); *see also Kline v. Eyrich*, 69 S.W.3d 197, 207 (Tenn. 2002).

For the reasons explained above, we conclude that Mr. Hartley never had "his own individual claim" to assert in this case. *See Ki*, 78 S.W.3d at 880. For the same reasons, neither of the decedent's two children had a separate claim. *See id.* Instead, one indivisible cause of action existed, that being the cause of action the decedent would have had, absent death, against the wrongdoer. *See id.* at 879; *see also Lynn*, 63 S.W.3d at 336. Thus, the decedent's survivors were only permitted to assert the cause of action in a representative capacity on behalf of the decedent.

## II. THE LEGAL EFFECT OF PLAINTIFF'S PRO SE COMPLAINT

Trinity argues that, because Mr. Hartley did not have an individual claim to assert, but was attempting to act on behalf of the decedent, the pro se complaint he filed was a nullity; therefore, it did not toll the statute of limitations.

Any person may conduct and manage his or her own case in any court of Tennessee. Tenn. Code Ann. § 23-1-109. However, the right of self-representation only allows an individual to conduct and manage "the person's *own* case." *See Id.* (emphasis added); *see also Vandergriff v. ParkRidge E. Hosp.*, No. E2014-02253-COA-R3-CV, __S.W.3d__, 2015 WL 9943593, at *4 (Tenn. Ct. App. Aug. 21, 2015). Accordingly, litigants may not appear in a representative capacity on behalf of others without an attorney. *See Old Hickory Eng'g and Mach. Co., Inc. v. Henry*, 937 S.W.2d 782, 786 (Tenn. 1996) (holding that a non-attorney president or shareholders of a corporation could not appear on behalf of the corporation); *Vandergriff*, 2015 WL 9943593, at *4 (concluding that parents were not able to file a pro se complaint that asserted claims on behalf of their minor daughter or appear in court as a legal advocate for her); *Elm*

*Children's Educ. Trust v. Wells Fargo Bank, N.A.*, 468 S.W.3d 529, 533 (Tenn. Ct. App. 2014) (holding that a non-attorney trustee may not represent a trust pro se).[4]

Ms. Beard argues that because wrongful death actions "may be instituted by . . . the surviving spouse in the surviving spouse's own name," *see* Tenn. Code Ann. § 20-5-107, Mr. Hartley was statutorily permitted to file this action pro se. While Section 20-5-107 allows the surviving spouse or next of kin to "institute" the wrongful death action on behalf of the decedent, the statute does not authorize the individual to practice law while doing so.[5] To the contrary, only licensed attorneys may engage in the "practice of law" in Tennessee. Tenn. Sup. Ct. R. 7, § 1.01; Tenn. Code Ann. § 23-3-103(a); *see also Vandergriff*, 2015 WL 9943593, at *5 (reasoning that, although Tenn. R. Civ. P. 17.03 allows parents to "sue or defend" on behalf of their minor children, "the rule does not authorize a parent to practice law while acting on behalf of [a] child.").

In Tennessee, the practice of law "relates to the rendition of service for others that call for the professional judgment of a lawyer." *Petition of Burson*, 909 S.W.2d 768, 775 (Tenn. 1995). Under this standard, the Supreme Court has held that preparing and filing a complaint on behalf of another constitutes the practice of law because it requires a lawyer's professional judgment. *See Old Hickory Eng'g and Mach. Co., Inc.*, 937 S.W.2d at 786. Similarly, according to the Tennessee Code, the practice of law includes "the appearance as an advocate in a representative capacity or the drawing of papers, pleadings or documents or the performance of any act in such capacity in connection with proceedings pending or prospective before any court . . . ." Tenn. Code Ann. § 23-3-101(3).

Because of the prohibition against the unauthorized practice of law in Tennessee, "[p]roceedings in a suit by a person not entitled to practice law are a nullity" and are considered void. *Bivins v. Hosp. Corp. of Am.*, 910 S.W.2d 441, 447 (Tenn. Ct. App. 1995) (citing 7 C.J.S Attorney and Client § 31, p. 869, n.13 & n.20); *see also Investors Grp., I Ltd. v. Knoxville's Cmty. Dev. Corp.*, No. E1999-00395-COA-R3-CV, 2001 WL 839837, at *2 (Tenn. Ct. App. July 25, 2001) (holding that a complaint filed on behalf of a limited partnership and signed only by a non-attorney was "void").

---

[4] The Tennessee Rules of Civil Procedure formalize this rule by requiring that "[e]very pleading, written motion, and other paper shall be signed by at least one attorney of record . . . or, if the party is not represented by an attorney, shall be signed by the party." Tenn. R. Civ. P. 11.01.

[5] We have noted that the wrongful death statutes give the surviving spouse the right to "control" over the action, unless he or she waives that right. *See Estate of Baker ex rel. Baker v. Maples*, 995 S.W.2d 114, 115 (Tenn. Ct. App. 1999). For example, a surviving spouse is entitled to "hire the attorney or attorneys needed to prosecute the action" and also "has the discretion either to litigate the claim or to settle it in a manner that is binding upon [other statutory beneficiaries]." *Kline*, 69 S.W.3d at 207.

Mr. Hartley was not a licensed attorney; therefore, he could not file a valid complaint that asserted claims on behalf of another individual without it being signed by a licensed attorney. The only complaint that was filed before the statute of limitations expired in this action was the pro se complaint filed by Mr. Hartley. As discussed above, Mr. Hartley was not pursuing his own personal claims in this case; instead, he was attempting to assert, in a representative capacity, the claims of the decedent. Thus, because the pro se complaint asserted claims on behalf of another individual and was not signed by a licensed attorney, the filing of that complaint was a nullity.

## III. RELATION BACK UNDER TENN. R. CIV. P. 15

The trial court held that the filing of Mr. Hartley's pro se complaint was sufficient to toll the statute of limitations pending the filing of the amended complaint signed by counsel on March 2, 2006, which related back to the original filing date. Based on this analysis, the trial court denied the defendants' motions to dismiss and thereafter their motions for summary judgment on the same grounds.

Generally, the filing of a complaint operates to toll the statute of limitations. *Lane v. Daniel*, No. W2012-01684-COA-R3-CV, 2013 WL 2325620, at *3 (Tenn. Ct. App. May 29, 2013); *see* Tenn. R. Civ. P. 3 ("All actions are commenced by filing a complaint with the clerk of the court. An action is commenced within the meaning of any statute of limitations upon such filing . . ."). Additionally, Rule 15.03 of the Tennessee Rules of Civil Procedure provides that a properly accepted amended complaint will relate back to the date of the original pleading. Tenn. R. Civ. P. 15.03.

However, as discussed above, "[p]roceedings in a suit by a person not entitled to practice law are a nullity" and are considered void. *Bivins*, 910 S.W.2d at 447. Something that is "void" has no legal effect. *Vandergriff*, 2015 WL 9943593, at *6 (citing Black's Law Dictionary 1349 (9th 3d. 2010)). Another legal dictionary defines "void" as "absolutely null," going on to describe an order that is "void ab initio" as "that which is void in the beginning, [which] cannot be cured by waiver, acquiescence or lapse of time." *Id.* (citing Bryan A. Garner, A Modern Legal Dictionary 920 (2d ed. 2005)).

Mr. Hartley filed the initial pro se complaint prior to the running of the statute of limitations; however, we have ruled that the initial complaint was a nullity and has no legal effect. Thus, the initial complaint did not operate to toll the statute of limitations. *See Duffner v. Keystops, LLC*, No. M2011-01484-COA-R3-CV, 2012 WL 3104903, at *6 (Tenn. Ct. App. July 31, 2012) (holding that because the plaintiff's complaint was void ab initio, it did not toll the statute of limitations). Because the initial complaint is a "nullity," it is treated as if it never existed; thus, the subsequent complaint which was signed by counsel and filed on March 2, 2006, cannot relate back under Rule 15.03 to the filing date of the initial complaint. *See In re A.S.C.*, No. E2013-01830-COA-R3-PT, 2014

WL 2014 4269114, at *6 (Tenn. Ct. App. Aug. 29, 2014) (holding that under Rule 15.03, "there can be no 'relation back' to a pleading . . . that was a nullity from the start.").

In reaching this conclusion, we are unpersuaded by Ms. Beard's argument that the subsequent complaint should be considered timely under Rules 17.01 and 11.01 of the Tennessee Rules of Civil Procedure. Rule 17.01 allows for the substitution of the real party in interest, even after the statute of limitations has passed, when a mistake has been made in naming the party. Tenn. R. Civ. P. 17.01. Although this rule is one of liberal construction, *see Chapman v. King*, 572 S.W.2d 925, 927-28 (Tenn. 1978), the instant case is not one in which an improper party was named as the plaintiff. To the contrary, Mr. Hartley was undoubtedly the party with standing to pursue the wrongful death claims on behalf of the decedent. *See* Tenn. Code Ann. § 20-5-107(a). Therefore, Rule 17.01 is inapplicable to this case.

Further, Rule 11.01 does not provide Ms. Beard with a basis for relief. Rule 11.01 states: "Every pleading, written motion, and other paper shall be signed by at least one attorney of record . . . or, if the party is not represented by an attorney, shall be signed by the party." Tenn. R. Civ. P. 11.01. A litigant who fails to comply with this rule is afforded an opportunity to *promptly* correct this error once it is brought to his or her attention. *See Id.* Tennessee courts have described what is required for a correction to be considered "prompt" under this rule on several occasions. *See Old Hickory Engineering and Mach. Co., Inc.*, 937 S.W.2d at 786 (delay of 37 days was not prompt); *Doyle Shirt Mfg. Corp. v. O'Mara*, 1999 WL 187160, at *3 (Tenn. Ct. App. April 7, 1999) (delay of 45 days was not prompt); *Investors Group*, *I Ltd.*, 2001 WL 839837, at *2 (appearance of counsel 53 days after service of motion to dismiss did not satisfy the promptness requirement).

Trinity brought the complaint's deficiency to Mr. Hartley's attention on November 1, 2005, when it filed its motion to dismiss. Mr. Hartley did nothing to address this problem until 121 days later, on March 2, 2006, when he filed a corrected complaint with an attorney's signature. We conclude that these actions were not "prompt" within the meaning of Rule 11.01.

Accordingly, we hold that Trinity was entitled to summary judgment on the defense of the statute of limitations and the trial court erred by failing to dismiss the wrongful death claims against Trinity. This determination renders the remaining issues in this appeal moot.

## IN CONCLUSION

The judgment of the trial court is reversed to the extent it pertains to Trinity Hospital, and this matter is remanded with instructions for the trial court to enter judgment summarily dismissing all claims and judgments against Trinity Hospital,

including the award for damages for the wrongful death of Ms. Hartley and discretionary costs.[6] Costs of appeal are assessed against Linda Beard.

_____
FRANK G. CLEMENT, JR., JUDGE

---

[6] Our decision in this appeal has no bearing on the final judgment entered against the other defendant for which no appeal was taken.